**IT IS ORDERED as set forth below:**



Date: January 31, 2022

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO. 15-58440-WLH |
| ) | |
| BAY CIRCLE PROPERTIES, LLC, *et al.*, ) | CHAPTER 7 |
| ) | |
| Debtor. ) | JUDGE WENDY L. HAGENAU |
| ) | |
| ) | |
| GOOD GATEWAY, LLC and, ) | |
| SEG GATEWAY, LLC, on behalf of ) | |
| JOHN LEWIS, CHAPTER 11 ) | |
| TRUSTEE FOR BAY CIRCLE ) | |
| PROPERTIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ADV. PROC. NO. 19-5284 |
| ) | |
| NRCT, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

1

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 76) (the "Motion"). This is an action seeking contribution. It is a core matter within the meaning of 28 U.S.C. § 157(b), and the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## *Summary Judgment*

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The party moving for summary judgment has "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323). What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material

> negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'. Instead, the moving party simply may 'show – that is, point out to the . . . court – that there is an absence of evidence to support the nonmoving party's case. (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Id. at 1437-38 (citing Celotex Corp., 477 U.S. at 323-31). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings. See Fed. R. Civ. P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. Hairston, 9 F.3d at 918. "The existence of a presumption alters a summary judgment movant's ability to meet its summary judgment burden of production because the presumption excuses the beneficiary from having to put forth evidence until the party against whom the presumption operates puts forth "'evidence to rebut or meet the presumption.'" Devan v. CIT Group/Commercial Services, Inc. (In re Merry Go–Round Enters., Inc.), 229 B.R. 337, 341 (Bankr. D. Md. 1999) (citing Fed. R. Bankr. P. 3017; Fed. R. Evid. 301).

When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. Hairston, 9 F.3d at 918. At the summary judgment stage the Court "'must not resolve factual disputes by weighing conflicting evidence.'" Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986) (quoting Lane v. Celotex Corp., 782 F.2d 1526, 1528 (11th Cir. 1986)). The Court must not "assess [ ] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device." Id. (quoting Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965)).

3

*Undisputed Facts*[1]

NRCT, together with its affiliates, Bay Circle Properties, LLC ("Bay Circle"), DCT Systems Group, LLC ("DCT"), Sugarloaf Centre, LLC ("Sugarloaf"), and Nilhan Developers, LLC ("Nilhan Developers") (collectively the "Debtors"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015. On June 8, 2015, the Court administratively consolidated the Debtors' cases.

The Debtors were all guarantors on two loans held by Wells Fargo Bank, NA. All eleven of the obligors on the loans, whether as guarantors or principals, are related. They are all owned or controlled by Chuck Thakkar or his family. Mr. Thakkar and his wife individually are also co-obligors and guarantors. The Debtors' obligations were secured by certain real property owned by each of them. The immediate reason for filing bankruptcy was a default on the loans and the threat of foreclosure on the real property. After the bankruptcy filings, Wells Fargo, the Debtors, and other non-Debtor entities including Chuck, Niloy, and Rohan Thakkar, executed a Settlement Agreement on November 18, 2015 in which Wells Fargo agreed to forbear from enforcing obligations and performance owed by the Debtors and other loan parties (the "Settlement Agreement"). The Settlement Agreement was amended on January 8, 2016 and approved by the Court on January 13, 2016 (Case No. 15-58440 Doc. No. 302). The Settlement Agreement stipulated the total debt due to Wells Fargo was $22,561,967.14, as of August 31, 2015, and required the full amount plus accruing interest to be paid by April 30, 2017. It set various deadlines for interim payments and release prices for the collateral. If Wells Fargo was not paid in full by April 30, 2017, it could record deeds-in-lieu of foreclosure on certain of

---

[1] Pursuant to Fed. R. Civ. P. 56(c)(3), the Court may take judicial notice of the docket in bankruptcy case nos. 15-58440 and 15-58444 pending in this Court. While not cited to by either party, under Fed. R. Civ. P. 56, the Court may consider facts not cited by the parties that exist in the entire record of the proceedings. White-Lett v. Bank of N.Y. Mellon Corp. (In re Lett), (Bankr. N.D. Ga. May 6, 2021).

4

NRCT's property and property of the other Debtors without further hearing. After the Settlement Agreement was finalized and approved, Wells Fargo assigned its interest and claim to Bay Point Capital Partners, L.P. ("Bay Point"). The first several months of these cases were devoted to the Debtors liquidating or refinancing various pieces of property to meet the milestone payment deadlines agreed to by Wells Fargo. All of the Debtors except NRCT liquidated or refinanced property to satisfy Wells Fargo, and the Wells Fargo debt was satisfied by the April 30, 2017 deadline.

Prior to the bankruptcy cases, Good Gateway, LLC and SEG Gateway, LLC (collectively "Gateway") obtained a judgment against Chuck Thakkar and others for $12 million. The judgment was recorded. At the time, Chuck Thakkar and Saloni Thakkar jointly owned the property now referred to as the Bay Circle Property. Shortly before the bankruptcy, Mr. and Mrs. Thakkar conveyed the Bay Circle Property to Bay Circle, but subject to Gateway's lien. As one of the milestone payments was approaching, Bay Circle sought to sell its property. Bay Circle was the second Debtor to seek to sell or refinance its property in furtherance of the Wells Fargo Settlement.

Gateway objected that its interest in the Bay Circle property was unnecessarily lost and asked that other Debtors be required to sell their property first or for adequate protection of the lien it lost by virtue of the sale of the Bay Circle Property. The Court approved the sale and provided Gateway a replacement lien on Bay Circle's claims for contribution and subrogation up to the amount of $2,675,000 (1/2 the sale price of the Bay Circle Property) ("Contribution Claim") (Case No. 15-58440 Doc. No. 797) (the "AP Order"). The Court later modified the AP Order (Case No. 15-58440 Docs. Nos. 1125 & 1490).

On December 11, 2018, after notice and a hearing, the Court appointed a Chapter 11 Trustee in all five bankruptcy cases (Case No. 15-58440 Doc. No. 919). The appointment was triggered by Mr. Thakkar's actions in the Nilhan Developers case. When the Trustee was appointed, the Trustee was tasked with investigating the potential Contribution Claim of Bay Circle against NRCT and any other Debtors or entities. The Trustee asked GlassRatner Advisory & Capital Group, LLC to use its expertise and analyze possible claims by Bay Circle against the other Debtors and non-Debtors, taking into account payments made by the different Debtors and other obligors both before and after the filing of the petition. On March 27, 2019, the Trustee filed his Preliminary Analysis Regarding Bay Circle's Contribution Claim (Case No. 15-58440 Doc. No. 1007) ("Preliminary Report") with a chart showing the payments made by the Debtors to Wells Fargo and Bay Point. The Trustee acknowledged that additional information was needed to complete the analysis. Paul Dopp of GlassRatner conducted an analysis and produced a report suggesting possible claims based on various assumptions (the "Dopp Report"). The Dopp Report set forth two possibilities, Scenario 1 and Scenario 2, and concluded Bay Circle held a claim in the range of $0 to $2,675,000. (Case No. 15-58440 Doc. No. 1030 Ex. A.)

On April 29, 2019, the Trustee filed a Motion Requesting Determination of the Amount of Debtor Bay Circle's Contribution Claim (Case No. 15-58440 Doc. No. 1030), attaching the Dopp Report ("Motion to Determine Claim"). The Trustee requested the Court enter an order holding Bay Circle has a contribution claim against NRCT and each of the non-Debtor obligors in the amount of $2,675,000, the maximum adequate protection claim provided to Gateway. Chuck and Saloni Thakkar, Niloy and Rohan Thakkar, and Gateway all filed responses (Case No. 15-58440 Docs. Nos. 1066, 1067, & 1068). The Thakkars objected to the procedural posture of the motion and argued it was not appropriate for the Trustee to pursue a claim on behalf of

6

Bay Circle against NRCT since he served as trustee of both. Gateway argued in support of the Motion to Determine Claim and in favor of Scenario 2, calculating Bay Circle's Contribution Claim using all co-obligors, not just the Debtors.

After a hearing on May 30, 2019, the Court entered a Scheduling Order (Case No. 15-58440 Doc. No. 1080), which, among other things, instructed parties-in-interest to submit papers about whether the Court should modify its AP Order and directed the Trustee to file a motion for approval of any arrangement whereby Gateway may prosecute the Contribution Claim of Bay Circle. After reviewing the responses of the parties, the Court entered an Amendment to Order on Amended and Restated Motion for Relief under 11 U.S.C. § 363 and Substantive Consolidation (Case No. 15-58440 Doc. No. 1125). It modified the AP Order to clarify the order in three key ways: the order was without prejudice to any defenses that might be raised to the Contribution Claim; the lien held by Gateway was only on the net proceeds of Bay Circle's claims, and not on the claims themselves; and, although Bay Circle may have claims against non-Debtors, Gateway's lien was only on Bay Circle's claims against the other Debtors.[2]

On June 20, 2019, the Trustee filed a Motion for Order Regarding Standing to Pursue Contribution and/or Subrogation Claims of Bay Circle (Case No. 15-58440 Doc. No. 1093). The Court approved the motion and granted Gateway standing to pursue the Contribution Claim of Bay Circle on July 11, 2019 (Case No. 15-58440 Doc. No. 1137). Gateway filed a complaint on behalf of the Trustee against NRCT with respect to Bay Circle's Contribution Claim on August 13, 2019, initiating this adversary proceeding.[3]

---

[2] On May 4, 2021, the Court entered a Second Amendment to Order on Amended and Restated Motion for Relief under 11 U.S.C. § 363 and Substantive Consolidation (Case No. 15-58440 Doc. No. 1490), which clarified that the adequate protection lien granted to Gateway is on the net proceeds of any contribution or subrogation claim which Bay Circle may have against the other Debtors, net of all allowed Chapter 11 and Chapter 7 administrative expenses and costs.

[3] On April 8, 2020, the Trustee filed a motion to convert the Bay Circle case to a case under Chapter 7 (Case No. 15-58440 Doc. No. 1371). The motion was granted, and the case converted to Chapter 7 on May 5, 2020 (Case No. 15-

On November 19, 2021, Defendant filed the Motion requesting an order granting NRCT summary judgment determining Bay Circle is not entitled to any contribution claim. Defendant contends it is entitled to judgment as a matter of law because Scenario 1 of the Dopp Report indicates Plaintiff has no claim. Defendant relies on the Dopp Report in support of the Motion and accepts as "undisputed" the payments made and the conclusion in Scenario 1. Defendant contends the Court has rejected the conclusion in Scenario 2, discounts it entirely, and argues Plaintiff has no evidence that any of the co-obligors is solvent.

On December 23, 2021, Plaintiff responded in opposition to the Motion. Plaintiff states there are genuine issues of material fact that preclude summary judgment. Plaintiff contends that insolvency is an affirmative defense and Defendant has the burden of proving it. Plaintiff also argues Scenario 2 is viable since Defendant did not previously object to it and the Court has not ruled on the matter.

The Court held a hearing on January 13, 2022, after which it entered a Scheduling Order (Doc. No. 97), directing the parties to submit supplemental briefs by January 24, 2022 on the question of which party carries the burden to prove solvency or insolvency in this action. The parties filed supplemental briefs as directed. (Docs. Nos. 102 & 103).

Having read and considered the Motion and responses thereto, the supplemental briefs, and the extensive history of this adversary proceeding and the related bankruptcy proceedings as reflected on the Court's docket, the Court determines genuine issues of material fact exist that preclude judgment as a matter of law.

---

58440 Doc. No. 1420). John Lewis, Jr. was thereafter appointed as Chapter 7 Trustee (Case No. 15-58440 Doc. No. 1425). Mr. Lewis filed a notice of substitution in place of the Chapter 11 Trustee in the adversary proceeding (Case No. 15-58440 Doc. No. 1454).

8

### *Applicable Law*

Plaintiff seeks a judgment against Defendant for contribution. Under Georgia law, a joint obligor who has paid more than his share of a joint debt is entitled to contribution from the other obligor and may pursue legal and equitable actions to enforce his contribution rights. O.C.G.A. § 23–2–71. Particularly, when the relevant parties are "sureties for the same principal for the same sum of money . . . and one pays more than an equal share of the sum, he may compel contribution from his cosureties." O.C.G.A. § 10–7–50. As the Georgia Court of Appeals has explained, "*[t]o the creditor* both parties are equally bound, and if one pays more than his equal share he may seek contribution from the other." Steele v. Grot, 232 Ga. App. 847, 848 (1998) (emphasis in original). "The right of contribution arises not when the joint obligation is made but when one obligor pays more than his share of the liability." Id.

In general, all co-obligors must contribute equally in discharging their common obligation. 18 Am. Jur. 2d Contribution § 20. Where a party is entitled to contribution, the general rule is that the measure of recovery should be the amount the claimant has paid in excess of his or her proportionate share. 18 Am. Jur. 2d Contribution §§ 17, 20; see also Sound Built Homes, Inc. v. Windermere Real Estate/S., Inc., 118 Wash. App. 617, 634 (2003), as amended on denial of reconsideration (Oct. 7, 2003) (the one who seeks contribution "may recover . . . only the excess which he has paid over his share.").

### *Insolvency*

Defendant contends that the insolvency of an obligor changes the calculation of contribution and Plaintiff has an affirmative duty to prove solvency. Defendant argues that, because Plaintiff has no evidence of the obligors' solvency, the claim fails as a matter of law.

9

Plaintiff contends solvency is presumed and insolvency is an affirmative defense to be proven by Defendant. Neither is entirely correct.

Contribution is a legal right and an equitable right. Legally, insolvency is irrelevant. "At common law[,] contribution could be enforced only for the aliquot share of each, reckoned as if all were solvent." Higdon v. Bell, 25 Ga. App. 54 (1920). The equitable rule of contribution adjusts contribution requirements for insolvency: "[t]he rule in equity in case of such insolvency is that the solvent sureties bear equally the burden of payment." Todd v. Windsor, 118 Ga. App. 805, 808 (1968); see also Crawford v. Patrick Hosp. Inv'rs, LLC (In re PCH Operations, LLC), 2016 Bankr. LEXIS 4163, at *47 n.25 (Bankr. W.D.N.C. Dec. 6, 2016) ("If the basis for cosurety contribution is equity, insolvent sureties are not accounted for in determining the per capita share, meaning the subsequent insolvency of a cosurety increases the exposure of solvent cosureties."); Cooper v. Greenberg, 191 Va. 495, 503 (1950) ("Contribution in a court of equity proceeds upon the application of the fundamental rule that equality is equity, and that if one of the sureties is insolvent or beyond jurisdiction, the loss will be apportioned among the solvent and available sureties."). Therefore, a determination of the shares for contribution under this approach excludes from consideration guarantors who are insolvent. See Kroona v. Dunbar, 868 N.W.2d 728, 736 (Minn. Ct. App. 2015) (fair share calculation is based upon the number of available co-guarantors). In other words, "if some guarantors are insolvent, those who are solvent must contribute their portion of the amount which insolvent guarantors would have been required to, but did not, pay." Mandolfo v. Chudy, 5 Neb. App. 792, 801 (1997), aff'd, 253 Neb. 927 (1998). Georgia has codified this approach. O.C.G.A. § 10-7-50 ("If one of the cosureties is insolvent, the deficiency in his share must be borne equally by the solvent sureties."). Thus, a co-

obligor who pays more than its equal share of the obligation cannot seek contribution from an obligor who is insolvent. See Higdon, 25 Ga. App. 54.

Typically, it is the party seeking contribution who asserts the insolvency of a co-obligor in an attempt to increase the share other co-obligors must pay. Sometimes a defendant asserts his own insolvency as a way to avoid a judgment or collection. The Court has found no cases where, like here, the defendant is asserting the insolvency of others. Nevertheless, no reason exists to apply the law differently than in typical situations.

A co-obligor's insolvency must be judicially determined. Appleford v. Snake River Min. Mill. & Smelting Co., 122 Wash. 11, 20 (1922); see Kroona, 868 N.W.2d at 736 (finding genuine issue of material fact regarding the number of guarantors available to contribute to the common liability and remanding for determination regarding how many of the nine guarantors were available to contribute to the common aggregate liability). Courts have ruled in different ways as to how the issue of insolvency is resolved. Compare Collection Ctr., Inc. v. Bydal, 2011 N.D. 63 (2011) (defendant had burden of proof on affirmative defense and failed to present competent, admissible evidence to rebut the presumption); Underwood v. Waterslides of Mid-Am., Inc., 823 S.W.2d 171, 187 (Tenn. Ct. App. 1991), abrogated by Chapman v. Bearfield, 207 S.W.3d 736 (Tenn. 2006) (burden on party asserting insolvency as an affirmative defense to present adequate proof for the court to declare them judicially insolvent); with Kroona, 868 N.W.2d 728 (paying more than fair share is an element of the contribution claim and ultimately the plaintiff's burden but defendant must present evidence to rebut the presumption); Mandolfo, 564 N.W.2d at 273 (plaintiff asserting insolvency in order to increase share of coguarantor must prove it). No court has ruled, however, that solvency is part of the plaintiff's case in chief. The predominant rule is that unless a co-obligor's insolvency has been judicially determined, the

court presumes that all co-obligors are solvent. 18 Am Jur 2d Contribution § 25; Gideon v. Johns–Manville Sales Corp., 761 F.2d 1129 (5th Cir. 1985). After reviewing the law in many jurisdictions, the Court adopts this predominate approach as consistent with Georgia law. The Court presumes the co-obligors are solvent unless and until the presumption is rebutted.

Georgia law recognizes the use of presumptions (O.C.G.A. § 24-14-20 et seq.), including in contribution actions. For example, Georgia law presumes that co-obligors received equal benefits from the common obligation. This presumption, however, is subject to rebuttal by proof that the co-obligors received an unequal benefit from the common obligation, Steele, 232 Ga. App. at 848–49 (citing 18 Am Jur 2d, Contribution, § 23), and it is the defendant who must offer such proof to overcome the presumption. See e.g., Gray v. Currie, 2005 WL 3132351, at *3 (N.D. Ga. Nov. 22, 2005); K/C Ice, LLC v. Connell, 352 Ga. App. 376 (2019).

A presumption of solvency is consistent with this approach. It assumes, like the presumption of equal benefit, that all are equally liable unless it is established otherwise. 18 Am. Jur. 2d Contribution § 20. Under early contribution caselaw, the legal right to contribution imposed an equal share of liability on all parties without regard to solvency. Higdon, 25 Ga. App. 54. Only when courts of equity became involved did the consideration of insolvency arise, and the consideration was for the benefit of the complaining party. Mills v. Hyde, 19 Vt. 59, 65 (1846); Faurot v. Gates, 86 Wis. 569 (1893); see also Restatement (Third) of Suretyship & Guaranty § 57, Comment d; Restatement (First) of Security § 154, Comment h. The courts viewed it as "inequitable" for the complaining party to be restricted from recovering fully from the solvent parties or for the solvent parties to escape a full share of liability. In re Wetzler, 192 B.R. 109, 118 (Bankr. D. Md.), aff'd sub nom. Wetzler v. Cantor, 202 B.R. 573 (D. Md. 1996); Restatement (First) of Security § 154, Comment h. The equitable objective is and has always

12

been to equalize the loss among those who are equally bound. Id. The courts struggled with how best to determine the outcome if a party was insolvent or a judgment uncollectible. Over time, the courts held that it was better for the court to judicially determine insolvency rather than leave it to the sheriff or other official attempting to collect the judgment. Appleford, 122 Wash. at 20 (1922). Courts further recognized that insolvency of a party did not eliminate the party's ultimate liability, as the co-obligors remained liable to each other should the insolvent party become solvent. Jewett v. Maytham, 118 N.Y.S. 635 (Sup. Ct. 1909). As the courts of law and equity merged, the presumption of solvency survived, since it provided for equal treatment to all co-obligors while allowing a party to put forward evidence of insolvency in a specific situation. Kroona, 868 N.W.2d at 733; see also Tucker v. Nicholson, 12 Cal. 2d 427, 434 (1938).

Moreover, a presumption in Georgia is also appropriate when the other party is the one with the primary knowledge on the subject. See Mayo v. Owen, 208 Ga. 483, 487 (1951); Ferrari v. Cnty. of Suffolk, 845 F.3d 46, 67 (2d Cir. 2016); O.C.G.A. § 24-14-22. The presumption of solvency in contribution cases is consistent with this Georgia practice since insolvency is uniquely known to the insolvent party.

Presumptions in Georgia, including the presumption of solvency, shift the burden of production of evidence to the defendant. As the Supreme Court of Georgia has explained, "'burden of proof' can relate to either of two separate and distinct evidentiary concepts." Heard v. Lovett, 273 Ga. 111 (2000) (citation omitted); see also Cent. of Georgia Ry. Co. v. Hester, 94 Ga. App. 226, 226 (1956). First, "burden of proof" is sometimes used to "indicat[e] the burden of establishing the case as a whole[.]" Heard, 273 Ga. at 111. This is the non-shifting burden of persuasion established by the pleadings, sometimes called the burden of pleadings. Id.; Cent. of Georgia Ry. Co., 94 Ga. App. at 226. Second, "burden of proof" is sometimes used to "indicat[e]

13

the burden of the evidence during the progress of the trial, or that certain evidence will make out a prima facie case or will serve prima facie to establish a given fact, if not rebutted. . . ." Heard, 273 Ga. 111 (citing McKemie v. McKemie, 76 Ga. App. 212, 214 (1947)). This "burden of testimony" or "burden of evidence" refers to the burden of producing some evidence from which the trier of fact can infer the fact alleged and may shift on facts or issues from one party to the other. Heard, 273 Ga. at 111; Cent. of Georgia Ry. Co., 94 Ga. App. at 226; see also O.C.G.A. § 24-14-1 ("The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential."); O.C.G.A. § 24-14-2. Sometimes, the burden of production shifts due to unique knowledge of the party. See Mayo, 208 Ga. at 487; Ferrari, 845 F.3d at 67; O.C.G.A. § 24-14-22.

"The party on whom the burden of proof rests is entitled to the aid of all legal presumptions arising out of facts established, and if those presumptions, added to the established facts, make a prima facie case, the burden of evidence is shifted to the other party." Dep't of Revenue v. Stewart, 67 Ga. App. 281 (1942). To overcome that presumption, the opponent must produce evidence sufficient to create a state of "equipoise" between his proof and that of the adversary. Complete Auto Transit, Inc. v. Baggett, 107 Ga. App. 415, 415 (1963); see also Gray, 2005 WL 3132351, at *3 (defendants presented evidence to overcome presumption of equal benefit). The ultimate burden of persuading the trier of fact, however, remains with the plaintiff. Thus, "while a presumption operating in favor of the party having the ultimate burden of persuasion requires the opposing party to go forward with evidence rebutting the presumption, it does not shift the original burden of persuasion. That burden remains with the party upon whom it was originally cast." Miller v. Miller, 258 Ga. 168 (1988); see also Fed. R. Evid. 301.

14

Here, Plaintiff, as the party seeking contribution, has the burden of proving by a preponderance of the evidence that it is entitled to contribution. See In re Toy King Distributors, Inc., 256 B.R. 1, 182 (Bankr. M.D. Fla. 2000) (concluding plaintiff established by a preponderance of the evidence that the debtor had a right to contribution under Georgia law). Part of the Plaintiff's case is that it paid more than its fair share of the obligation. Kroona, 868 N.W.2d 728. While there is a presumption all co-obligors are solvent, the defendant is entitled to offer proof to overcome that presumption. Such evidence should include not only a balance sheet analysis but also whether the entity is paying its debts as they come due and other relevant facts. Harris v. Handmacher, 542 N.E.2d 77, 81 (Ill App. 1989); Chalk v. Collier, 208 S.W. 972, 974 (Tex. App. 1919). Defendant argues that because the Debtors are in bankruptcy, it is entitled to a presumption of insolvency, but the law of contribution does not provide for such a presumption. Evidence of bankruptcy is some evidence of insolvency, but it is not dispositive. See Gideon, 761 F.2d at 1140. If Defendant provides evidence of insolvency, the burden of persuading the finder of fact that the plaintiff paid more than its fair share remains on the Plaintiff. Merry Go–Round Enters., Inc., 229 B.R. at 341.

The Court holds that Plaintiff is entitled to the benefit of the presumption that all co-obligors are solvent. Defendant, therefore, has the burden of coming forward with evidence to rebut or meet the presumption. Nevertheless, Plaintiff retains the ultimate burden of proving it is entitled to contribution because it paid more than its fair share.[4] Movant Defendant submitted no evidence of the insolvency of it or any co-obligor, and so has not rebutted the presumption of

---

[4] Further, the parties have not discussed what date should be used for purposes of determining solvency. Dopp assumed the date of solvency for purposes of determining the contribution claim is November 7, 2017, based on the date the Court granted Gateway the adequate protection lien. He, however, provided no explanation for choosing that date. The time of determining insolvency is the time of trial. See Jewett, 118 N.Y.S. at 641 ("There should be a remedy decreed against the insolvent parties, which may be enforced if they become afterwards able to pay"); Harris, 542 N.E.2d 77 (after judgment, plaintiff sought to reapportion liability based on insolvency, which was permitted, but insolvency was not proven).

15

solvency. Without such evidence, the Motion is nothing more than a denial of the allegations of Plaintiff's pleadings. As such, Defendant is not entitled to summary judgment. Id.

### *Dopp Report*

Defendant contends it is entitled to judgment as a matter of law because Scenario 1 of the Dopp Report indicates Plaintiff has no claim. Defendant relies on the Dopp Report in support of the Motion and accepts as "undisputed" the payments made and the conclusion in Scenario 1. Defendant contends the Court has rejected the conclusion in Scenario 2 and discounts it entirely. Plaintiff contends genuine issues of material fact preclude summary judgment.

Scenario 1

Defendant accepts as "undisputed" the payments made and the conclusion in Scenario 1. In Scenario 1, Dopp determined DCT was insolvent and excluded it from his calculations. He calculated Bay Circle's contribution claim against the three solvent Debtors. He divided the total paid ($24,040,570) by four and determined Bay Circle's liability for the total payments towards the Bay Point loan was $6,010,142.52. Dopp concluded that Bay Circle paid $5,542,913, $467,229.00 less than ¼ of the $24,040,570 total, and, therefore, it did not have a contribution claim.

The Dopp Report, however, is not dispositive. Mr. Dopp has never testified in person or via affidavit and it is improper for the Court to consider evidence cherry-picked from the Dopp Report, where here Defendant relies completely on the Dopp Report Scenario 1, but completely rejects Scenario 2. Moreover, Scenario 1 ignores the fact that DCT paid $3,125,822 of the $24 million. (See Doc. No. 1481.) "When, because of insolvency, . . . the contribution obtained from a cosurety after reasonable collection efforts is less than that cosurety's contributive share, the contributive shares of the other cosureties as among themselves are recalculated." Restatement

16

(Third) of Suretyship & Guaranty § 57(2)(b) (1996). "In such a case, the solvent and available cosureties must contribute a larger share. If some part of his contributive share is obtained from an insolvent surety, this will be considered in decreasing the amount of contribution from the others." Restatement of Security § 154, Comment h; see also Toy King Distributors, Inc., 256 B.R. 1 (calculating contribution when some parties had limited liability).

Accordingly, under Scenario 1, the amount DCT paid ($3,125,822), should be subtracted from the total ($24,040,570) that is to be borne equally among the remaining four solvent Debtors. That total should then be divided by four, which comes out to $5,228,687 for each of the remaining four Debtors. Bay Circle paid $5,542,913, which is $314,226 **more** than its share. Accordingly, in the Court's view, Dopp's conclusion is subject to question and does not establish, as a matter of law, that Plaintiff has no claim.

Scenario 2

Next, Defendant argues it is entitled to judgment as a matter of law because the Court has rejected the Scenario 2 methodology.[5] In response, Plaintiff argues that Defendant has adopted the Dopp Report by not previously objecting to it and the Court has not ruled on the methodology.

Defendant's contentions are not accurate. The Court's Amended Order says the AP lien is only on the contribution claims against the Debtors, but it is clear that nothing affects Bay Circle's contribution claims against the non-Debtors. The Court's prior orders say nothing about how to calculate Bay Circle's claim against the Defendant (i.e. whether to divide by 5 Debtors or 11 co-obligors).

---

[5] Defendant also contends it is entitled to judgment as a matter of law because Plaintiff has offered no evidence of insolvency. Insolvency is discussed above.

17

Further, the purpose of the Dopp Report was not to conclusively determine the amount of the claim. Rather, the report was intended as an estimate of the maximum claim that could be owed so a plan could be proposed. As noted by counsel for the Trustee at the hearing before the Court on May 30, 2019, the Dopp Report was merely "a report and recommendation." (Doc. No. 1481 at 52.) The Court never held a hearing on the Dopp Report and has never heard testimony from Mr. Dopp. Further, several objections to the Dopp Report were filed, many of which took issue with Dopp's assumption in Scenario 2 that all of the non-Debtors were solvent.

Chuck and Saloni Thakkar filed an objection stating there was evidence that two to four of the non-Debtor obligors were insolvent. (Doc. No. 1066 at 4-5.) Niloy, Inc., Niloy & Rohan LLC, Jax Fairfield, LLC, Niloy and Rohan Thakkar also objected. (Doc. No. 1067.) They noted Dopp did not conduct a complete analysis of all of the facts necessary to make a determination with respect to the contribution claim and his "conclusion that each of the non-Debtor entities were solvent as of November, 2017 is nothing more than rank speculation on his part – not an informed and factually supported opinion." (Doc. No. 1067 at 9.) At the hearing on May 30, 2019, counsel for the Trustee acknowledged solvency was an open issue. (Doc. No. 1481 at 49.)

The measure of contribution is based on the number of available obligors. No evidence or argument has been presented as to how to divide the liability; the Dopp Report is unauthenticated hearsay which, on its face, raises issues about how to calculate contribution. A genuine issue of material fact exists regarding the number of obligors available to contribute and, ultimately, whether Bay Circle paid more than its fair share. Accordingly, Defendant has not established it is entitled to judgment as a matter of law.

*Summary*

For the reasons stated above, the Court concludes summary judgment is not warranted.

Accordingly,

**IT IS ORDERED** that the Motion is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

John A. Thomson, Jr.
Adams and Reese LLP
3424 Peachtree Road NE, Suite 1600
Atlanta, GA 30326

Edmund S. Whitson, III
Adams and Reese LLP
101 E. Kennedy Blvd., Suite 4000
Tampa, FL 33602

Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell Jr., LLC
Buckhead Centre
2964 Peachtree Road NW Suite 555
Atlanta, GA 30305

Clay Martin Townsend
Morgan & Morgan, PA
20 North Orange Avenue Suite 1500
Orlando, FL 32801

Walter E. Jones
Balch & Bingham LLP
30 Ivan Allen Jr. Boulevard, N.W., Suite 700
Atlanta, Georgia 30308

John Lewis, Jr.
Shook, Hardy & Bacon, LLP
1230 Peachtree Street, Suite 1200
Atlanta, GA 30309