

**IT IS ORDERED as set forth below:**

**Date: July 21, 2022**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 15-58440-WLH |
| | ) | |
| BAY CIRCLE PROPERTIES, LLC, *et al.,* | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |
| GOOD GATEWAY, LLC and, | ) | |
| SEG GATEWAY, LLC, on behalf of | ) | |
| JOHN LEWIS, CHAPTER 7 | ) | |
| TRUSTEE FOR BAY CIRCLE | ) | |
| PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PROC. NO. 19-5284 |
| | ) | |
| NRCT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING NRCT'S MOTION FOR RECONSIDERATION OF COURT'S
RULING ON ADMISSION OF LATE FILED EXHIBITS**

1

**THIS MATTER** is before the Court on NRCT's Motion for Reconsideration of Court's Ruling on Admission of Late Filed Exhibits (Doc. No. 239) (the "Motion").

The Court held a trial on the Plaintiff's complaint for contribution in the above-styled adversary proceeding on May 9-11, 2022. One of the primary issues in the trial was the solvency or lack thereof of co-obligors. Despite numerous requests for information on solvency, Defendant only produced five of its intended insolvency exhibits two weeks before trial. Then, four days before trial, Defendant "substituted" different documents for those exhibits and added "insolvency analyses" and "balance sheets" for the other co-obligors as additional exhibits. When the exhibits and testimony on the topics were offered, Plaintiff objected on the grounds the exhibits were not produced and/or filed timely, had never been produced despite numerous requests, were inconsistent with deposition testimony taken only two weeks earlier, were not prepared by an expert, and were not admissible under the Federal Rules of Evidence. The Court denied admission of the exhibits at issue but allowed Chuck Thakkar to testify as the manager or owner of the companies. The Court also permitted Defendant to use the exhibits to refresh Mr. Thakkar's recollection.

On July 1, 2022, Defendant filed the Motion asking the Court to reconsider its order and to admit excluded exhibits: Defendant's Exhibits 30, 31, 33, 34, 40, 44, 47, 49, 51, 56, 58, 71, and 72. Defendant contends Plaintiff also filed exhibits late but was allowed to use them and that only Defendant was penalized. Plaintiff filed a response in opposition to the Motion (Doc. No. 245), contending Defendant has engaged in a strategy of obstruction and delay and reconsideration is not warranted. The Court heard oral argument on the Motion on July 12, 2022 and denied the Motion. Having read and considered the Motion, the response thereto, and the record of the case,

the Court denies the Motion for the reasons set forth below and those stated in its oral ruling, which is incorporated herein.

I.      Jurisdiction

The Court's oral decision to exclude exhibits was an interlocutory order, which is not subject to appeal until the court enters a final judgment in this adversary proceeding. "It is widely recognized that trial courts have the inherent authority to 'reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A trial court may modify, or even rescind, such interlocutory orders.'" Boyd v. Toyobo Am., Inc. (In re Second Chance Body Armor, Inc.), 434 B.R. 502, 504 (Bankr. W.D. Mich. 2010) (citations omitted); see also Mullally v. Jones, 2010 WL 3359333, at *1 (D. Nev. Aug. 20, 2010). As the Court's order was interlocutory, it is within the Court's discretion to review this motion to reconsider.

II.     Facts and Procedural History

This adversary proceeding has been pending since August 13, 2019. Defendant answered the complaint on May 11, 2020, two years to the day before the Court concluded the trial on the Complaint. In its Answer, Defendant denied the allegation of NRCT's solvency and asserted "[t]he claims set forth in the Complaint are barred, in whole or in part, due to the insolvency of NRCT at the time of the transactions giving rise to the claims asserted herein." (Doc. No. 11.)

As the case progressed, Plaintiff sought discovery from Defendant on the issues of insolvency and payments made on the secured debt and other issues. On September 9, 2020, Plaintiff sent a series of interrogatories and requests for production seeking documents, including any financial data or statements, related to the contribution claim asserted against NRCT and any defense. (Doc. No. 83 part 7.) The requests also asked, with regard to any expert retained or anticipated to testify at trial, for all reports created in connection with the adversary proceeding

3

along with all documents considered or relied upon in preparing such reports. The interrogatories asked Defendant to identify and describe with specificity any and all transactions that you believe support or refute any claim against NRCT. (Doc. No. 83 part 8.)

Defendant failed to provide responsive information and Plaintiff filed a Motion to Compel (Doc. No. 83) the production of the information requested, including that relating to Defendant's insolvency defense. On January 13, 2022, the Court granted the motion to compel (Doc. No. 98) and entered a Scheduling Order (Doc. No. 97). The Scheduling Order ordered the parties to produce all non-privileged documents responsive to the outstanding document requests by January 27, 2022. The Scheduling Order instructed the parties to file a statement of stipulated facts on the docket by March 1, 2022 and include in it whether they stipulated to the payments made by the Debtors, as set out in Table 1 of the Dopp Report, and the lack of payments by the non-Debtor obligors, as reflected in Table 2 of the Dopp Report. The Scheduling Order further stated that failure to disclose the documents as directed would result in sanctions, and the Court set a deadline to file exhibits on the docket of April 8, 2022.

Defendant failed to produce all responsive material, and Plaintiff filed a Second Motion to Compel (Doc. No. 111) requesting Defendant produce answers to interrogatories and responsive documents relating to, inter alia, NRCT's insolvency defense. Plaintiff also sought to depose Niloy and Rohan Thakkar and continue Chuck Thakkar's deposition. At his November 2, 2021 deposition as NRCT's corporate representative, Chuck Thakkar had repeatedly stated he did not know the basis for NRCT's insolvency defense and did not know if NRCT had property that exceeded its liabilities. (Doc. No. 83 part 5.) Plaintiff sought to depose the members of NRCT, Niloy and Rohan Thakkar, to address the solvency issue. On February 23, 2022, the Court entered an Order on Second Motion to Compel (Doc. No. 124) directing Niloy and Rohan Thakkar to

appear for depositions. The Court refrained from ordering further document production at the time. But the Court reiterated the requirement that Defendant state by March 1, 2022 whether it stipulated to the factual details in the Dopp Report.

Defendant then produced some documents, but it again failed to provide responsive financial documents on the issue of insolvency. Plaintiff then filed a Third Motion to Compel (Doc. No. 129) requesting Defendant produce documents responsive to its requests for production, deposition notices, and interrogatories and requesting Chuck, Niloy, and Rohan Thakkar to appear for depositions. The Court entered an Order on Plaintiff's Third Motion to Compel (Doc. No. 142) on March 30, 2022. The Court ordered, "all documents identified by Defendant in the Amended Proposed Consolidated Pre-Trial Order (Doc. No. 141) in Defendant's exhibit list must be produced to Plaintiff by April 5, 2022."[1] The Court further ordered, "documents not produced cannot be used, referred to, discussed, or relied on at trial." The Court amended the prior Order and Notice of Trial (Doc. No. 107) to direct each party to file the exhibits identified in the Proposed Consolidated Pre-Trial Order by April 29, 2022, together with any objections to authenticity of any exhibit listed by the other party in the Proposed Consolidated Pre-Trial Order. Defendant's exhibit list included in the Consolidated Pre-Trial Order (Doc. No. 151) did not include any financial statements, balance sheets, or insolvency analyses of NRCT or any co-obligor.[2]

Meanwhile, Defendant sought additional time to file expert findings and reports and to produce Niloy Thakkar for a deposition. A summary of expert findings and expected testimony was required to be filed no later than April 8, 2022, together with any expert report (Doc. No. 142).

---

[1] The Court also directed NRCT to file on the docket that it had made inquiries whether financial statements existed for the period 2015—present for the five Debtors and the non-Debtor obligors. On April 7, 2022, NRCT filed a statement that no such financial statements were prepared or were in its custody, possession, or control (Doc. No. 149).

[2] The parties agreed in the Consolidated Pre-Trial Order to exchange any previously unproduced documents <u>two weeks prior to trial</u>.

On April 8, 2022, Defendant sought to extend the deadline to April 12, 2022. On April 12, 2022, Defendant filed a two-page summary stating it retained John Speros to offer expert testimony regarding the value of the Wells Fargo/Bay Point collateral (Doc. No. 153). Defendant stated it had also retained Joshua Radner as an expert (Doc. No. 147), but Defendant did not explain the basis of Mr. Radner's testimony and Defendant failed to file corresponding expert findings, expected testimony, and expert reports.

Defendant also failed to comply with the Court's order to stipulate as to payments identified in the Dopp report. Pursuant to the Order on Third Motion to Compel (Doc. No. 142), Defendant was to state, no later than April 8, 2022, whether it stipulated to the amount and source of payments set out in Table 1 of the Dopp Report. Defendant failed to file the statement as directed. Accordingly, the Court ordered Defendant to appear at the start of trial to show cause why it should not be held in contempt for its failure to file a statement as directed (Doc. No. 161). On April 25, 2022, two weeks after the deadline, Defendant filed a response (Doc. No. 169) stating it agreed with the calculations. The Court ultimately found the order to show cause was satisfied (Doc. No. 210).

The parties eventually filed their exhibits on the docket. Defendant filed exhibits on three occasions:

1. On April 29, 2022, Defendant filed exhibits 1-34 (Doc. No. 181), which did not match the exhibit list in the Consolidated Pre-Trial Order.

2. On May 5, 2022, Defendant filed exhibits 36-68 (Doc. No. 191) and 69-70 (Doc. No. 192), all of which were new and had not been previously filed.

3. Finally, on Friday, May 6, 2022, at 6:59 p.m., NRCT filed Replacement and Additional Exhibits (Doc. No. 196): 30, 31, 33, 34, 40, 44, 47, 49, 51, 56, 58, 71,

and 72. The exhibits, other than 71 and 72, were "replacement" exhibits—while they were labeled with the same exhibit numbers of exhibits previously filed, they were in fact different and new exhibits. D71 and D72 were entirely new, not having been identified or listed previously.

Plaintiff timely filed exhibits 1-246 (Docs. Nos. 174-178) on April 29, 2022. While the exhibits were visible to any party using CM/ECF, the documents needed to be "flattened" because of technical issues. The clerk's office requested that the exhibits be refiled in a "flattened" format. On May 6, 2022, Plaintiff re-filed exhibits 1-246 to fix the technical formatting issue. It also filed exhibits 247-254, which were copies of deposition transcripts and accompanying exhibits.

III.   <u>Legal Issues</u>

a.   <u>*Motion to Reconsider Standard*</u>

Defendant asks the Court to reconsider its order and admit excluded exhibits, but Defendant does not state on what basis it seeks reconsideration. Federal Rule of Civil Procedure 59, made applicable by Bankruptcy Rule 9023, permits bankruptcy courts to alter or amend an order or judgment. Fed. R. Civ. P. 59(e), Fed. R. Bankr. P. 9023. As explained by the Supreme Court, the rule "may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment." <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 486, n.5 (2008) (citing 11 C. Wright & A. Miller, Fed. Prac. & Proc. § 2810.1, pp. 127-128 (2nd ed. 1995)). Accordingly, to prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact. <u>*In re Kellogg*</u>, 197 F.3d 1116, 1119 (11th Cir. 1999). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" <u>Oto v. Metro Life Ins. Co.</u>, 224 F.3d 601, 606 (7th Cir. 2000)

(citations omitted). Such motions should not be used to relitigate issues already decided, to pad the record for an appeal, or to substitute for an appeal. A motion to reconsider "is frivolous if it raises no manifest errors of law or misapprehensions of fact to explain why the court should change the original order." In re Miles, 453 B.R. 449, 450-51 (Bankr. N.D. Ga. 2011).

Another ground for setting aside an order of this Court exists under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60. The rule permits relief from a final judgment, order, or proceeding in certain circumstances. Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. The decision to alter or amend a judgment is highly discretionary. Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th Cir. 1985). Rule 60(b) lists six categories of reasons or grounds on which to base a motion seeking relief from a final judgment, order, or proceeding. The rule provides the Court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) was not intended to provide relief for error on the part of the court or to afford a substitute for appeal." Matter of E.C. Bishop & Son, Inc., 32 B.R. 534 , 536 (Bankr. W.D. Mo. 1983) (quoting Title v. U.S., 263 F.2d 28 , 31 (9th Cir. 1959)).

Defendant does not allege any newly discovered evidence or fraud or a void or satisfied judgment. At most, Defendant alleges the Court erred in its decision. An error is not a basis for

reconsideration but, as outlined below, the Court does not agree that it erred in its evidentiary ruling.

    b.  *Late Filed Exhibits*

The Federal Rules of Civil Procedure "endow trial judges with formidable case-management authority," and a "party who flouts a court order does so at its own peril." Carrington Mortg. Servs., LLC v. Gionest,  2020 WL 86195, at *3 (D. Me. Jan. 7, 2020) (citing Mulero-Abreu v. Puerto Rico Police Dep't, 675 F.3d 88, 91 (1st Cir. 2012); Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 37 (1st Cir. 2012)). A trial court "[c]onfronted with repeated failures to comply with its scheduling orders . . . [has] considerable discretion in deciding what to do." McKeague v. One World Techs., Inc., 858 F.3d 703, 706 (1st Cir. 2017).

Courts considering whether to exclude certain late-filed exhibits may consider various factors including: 1) the history of the litigation; 2) the sanctioned party's need for the precluded evidence; 3) the sanctioned party's justification (or lack of one) for its late disclosure; 4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket. Gionest, 2020 WL 86195, at *3 (citing Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009)).

For example, in Gionest, the court found the history of the litigation weighed against admission where the plaintiff repeatedly failed to meet the court's other deadlines or to meet its obligation to provide exhibits to the defendant over the course of the litigation. The court noted that the exhibits would not determine the success of the plaintiff's case, so the second factor was at most neutral. As to the justification, the court found the attorneys should have been aware of the deadline and, given that, their failure to comply appeared intentional and supported exclusion (as

to most of the exhibits). The defendant was deprived of an opportunity to scrutinize the exhibit plaintiff sought to introduce, a payment history. As to the effect on the docket, the court noted that the case "has lingered on the Court's docket for years," and the "last-minute delivery of exhibits . . . created the need for this motion and further delayed resolution of the case." Id. at *6.

On the one hand, where a late-filed exhibit merely updates or revises an earlier, timely-filed exhibit, courts will generally allow a late filing as harmless. See e.g., Holsum de P.R., Inc. v. Compass Indus. Grp. LLC, 530 F. Supp. 3d 228 (D.P.R. 2021) (late disclosure of revision to damages calculation was harmless where manufacturer had obtained a calculation of damages during ordinary course of discovery and four months before discovery ended, changes were minor, and calculation methodology for damages remained the same). On the other hand, courts will generally exclude a late-filed exhibit where a party has information in its possession but fails to timely share and file it. See e.g., Rockwood Select Asset Fund XI v. Devine, Millimet & Branch, PA, 2016 WL 2637818, at *7 (D.N.H. May 6, 2016) ("Rockwood failed to make a timely disclosure of its damages calculations and the underlying evidence—much, if not all, of which was or ought to have been in Rockwood's possession well before discovery closed."); Mullally v. Jones, 2010 WL 3359333, at *2 (D. Nev. Aug. 20, 2010) ("as Plaintiff has failed to prove that it was produced in a timely fashion and, thereby, has failed to show that Defendant was on notice that it might be used and had sufficient time to look into the validity and significance of this document. The exhibit remains excluded.").

Applying the factors identified above for the admission of late exhibits leads the Court to conclude that admission of Defendant's exhibits at issue is not warranted. The history of the litigation weighs against reconsideration here. This adversary proceeding has been pending for nearly three years, and it relates to two bankruptcy cases that were filed over seven years ago and

an issue identified by the parties over five years ago. Defendant answered the complaint two years

ago and asserted insolvency as an affirmative defense (Doc. No. 11.)

Defendant has had ample notice of the issues to be tried and the information requested by

Plaintiff, but Defendant has repeatedly failed to meet the Court's deadlines and to provide exhibits

to the Plaintiff. Defendant has repeatedly flouted the Court's direction to produce and share

documents, even after Plaintiff filed several motions to compel. Plaintiff sent discovery requests

in September of 2020 requesting financial data and statements and responsive documents relating

to NRCT's insolvency defense. Defendant continually delayed in responding to and providing

information to Plaintiff. Plaintiff filed not one or two but three motions to compel Defendant to

produce documents. Even after the Court provided clear direction that the parties were to file all

exhibits on the docket by April 29, 2022, Defendant failed to file all documents as directed.

Defendant filed several exhibits after the close of business on the Friday before trial. This case has

lingered on the Court's docket for years, and the last-minute delivery of exhibits has created the

need for this motion and further delay. The Court notes that not only were Defendant's exhibits

filed late, but this motion was also filed a month and a half after the trial and the Court's oral

ruling.

The exhibits will not determine the success of Defendant's case. As described in detail

below, many of the documents Defendant asks the Court to reconsider and admit are not relevant

to the contribution analysis. Others have no supporting documents or other markings of accuracy

so as to be of minimal evidentiary value, and none are admissible as a summary under Fed. R.

Evid. 1006 as urged by Defendant. Moreover, the Court allowed Chuck Thakkar to testify to the

financial condition of the companies as the manager of the companies at issue based on his personal

knowledge, so the basic information is in evidence.

11

Defendant has not provided a justification for its late disclosure. Defendant delayed and delayed in providing information requested even though much, if not all, of it was (or ought to have been) in its possession well before discovery closed. See Rockwood Select Asset Fund XI, 2016 WL 2637818, at *7. The issue of solvency was raised even before the adversary proceeding was filed (see Case No. 15-58440 Docs. Nos. 1066, 1067, 1068, 1099, & 1166), and it is identified as an affirmative defense in the Answer. Defendant knew it was an issue and, in fact, all three corporate representatives deposed only a couple of weeks before trial were asked about it. All stated they did not know anything about the solvency of Defendant or various other entities. Rather than answer the questions or provide the information in a timely manner, Chuck Thakkar simply prepared these exhibits a couple of days before trial. Even though counsel came to represent the Defendant after the complaint was filed, they have represented Defendant since August 2021 and had more than enough time to gather the information necessary. Discovery was extended at their request, and all the applicable trial deadlines were set long after counsel was in the case. The Court provided in the order of March 30, 2022 that any documents not produced timely would be excluded from the trial.

Plaintiff objected to admission of the exhibits because they came as a surprise to Plaintiff, as they did to the Court. Defendant had not indicated it would present these exhibits until they were filed with the Court, some versions initially on April 29 and the "final" versions on May 6 (after the close of business on Friday before the Monday trial) and Plaintiff was not on notice that defendant intended to use the documents. See Mullally, 2010 WL 3359333, at *2. Plaintiff repeatedly asked Defendant for information regarding its insolvency defense through document requests, interrogatories, deposition notices, and deposition questions, and Defendant steadfastly refused to provide responses. Chuck Thakkar testified at his deposition that he did not know the

basis for NRCT's insolvency defense and did not know if NRCT had property that exceeded its liabilities. Days before trial, after all depositions had been completed, Chuck Thakkar suddenly created these insolvency analyses, eliminating any opportunity for the Plaintiff to make inquiries about them.

Although Chuck Thakkar and Defendant's counsel argue the exhibits are all created from the public record, that is not true. The excluded exhibits include information not otherwise included in the record including: the value of land, interest due on the Norcross Hospitality note, amounts NRCT allegedly owes to affiliates, and Chuck Thakkar's purported personal assets and liabilities. These exhibits are not just demonstrable exhibits of well-known facts but new information created by Defendant.

Moreover, the contested exhibits did not merely revise those already in the record—they were entirely new documents. All are supposed balance sheets or insolvency analyses created by Chuck Thakkar and filed on the eve of trial. Plaintiff had no opportunity to review the documents or ask Chuck Thakkar about them.

Defendant's submission of late-filed documents also affected the Court's docket. Since Defendant not only filed brand new exhibits but also "replaced" certain previously filed exhibits after the close of business the Friday before trial, the late filing created some confusion at trial about what exhibits were which. For example, while Defendant timely filed D30 on April 29, 2022, Defendant replaced D30 with a different document, also labeled D30, on May 6, 2022. When the Court started trial on May 9, 2022, it did not realize that the D30 it had was not the same document that Defendant had just filed and marked as D30. The late filing also necessitated this Motion, Plaintiff's response thereto, and the Court's review of both.

13

While Defendant has maintained it has a compelling need for the contested exhibits, "a compelling need alone 'cannot carry the day.'" <u>Gionest</u>, 2020 WL 86195, at *6. The Court sees no compelling need for the admission of exhibits created by Chuck Thakkar only days before trial from information not previously made available to Plaintiff. Moreover, the Court allowed Chuck Thakkar to testify from his personal knowledge <u>and</u> to review the excluded exhibits to refresh his recollection. The history of the litigation, the Defendant's lack of justification for its late disclosure, the surprise and prejudice associated with the late disclosure, and the impact on the Court's docket all weigh against admission of the late filed documents here. Defendant has not presented any newly discovered evidence or identified a manifest error of law to demonstrate reconsideration of this conclusion is warranted. The exhibits remain excluded.

Defendant contends Plaintiffs Exhibits 116, 74, 96, 85, 110, 111, 112, 113, 137, 138, 139, 183, 184, 185, 187, 129, 181, 127, all of which were admitted, were late filed. The Court disagrees. These exhibits were all included in the exhibit list filed on April 29, 2022 (Doc. No. 179) and were all originally filed on April 29, 2022. They were available for review by the Court and Defendant then. The exhibits were refiled on May 6, 2022 at the Court Clerk's request for formatting reasons, but the exhibits themselves were not changed.

Plaintiff filed additional new exhibits (247-254) on May 6, 2022. Exhibits 249, 250, 251, 252, 253, 254, and 255 were admitted. Three of the exhibits are deposition transcripts: P247 is the transcript of Chuck Thakkar's deposition dated April 20, 2022; P248 is Niloy Thakkar's deposition transcript dated April 29, 2022; and P255 is a flash drive containing designations from the video depositions of Rohan and Niloy Thakkar taken April 21, 2022 and April 29, 2022. The remaining exhibits (P249-254) are exhibits to Niloy's deposition. The delay by the Thakkars in appearing for their depositions necessitated the late filing because the transcripts were not all available by April

14

29, 2022. Niloy's deposition was not even taken until that day. Of course, Defendant was represented at all three depositions and was aware of the information and exhibits in them even before they were filed with the Court.

Furthermore, the Consolidated Pre-Trial Order identifies depositions that would be submitted by the parties. Any objections to the use of the depositions were due by April 29, 2022. Plaintiff identified Chuck, Rohan, and Niloy Thakkar's depositions as ones it would seek to use (see Doc. No. 151 p. 7). Defendant did not object to the use of these depositions. Further, at trial, Defendant asked that the depositions be submitted in their entirety with exhibits, rather than simply excerpts of the depositions as Plaintiff had proposed. Defendant cannot be heard to complain about filing documents it requested. Moreover, the deposition exhibits (P250-54) are duplicative of other exhibits in the set Plaintiff timely filed on the docket on April 29, 2022, each of which was separately presented and admitted into evidence.

The admission of Plaintiff's exhibits is substantively different from the exhibits Defendant seeks to admit, and the Court finds no basis to reconsider its decision to admit these exhibits.

### c. *Other Admissibility Issues*

Putting aside the lateness of the exhibits, other issues render the contested exhibits inadmissible. While Defendant contends the excluded exhibits constitute summaries, the documents do not meet the requirements of admissibility of Fed. R. Evid. 1006. Further, the statements Defendant seeks to admit constitute hearsay and must be excluded.

### i. Summaries

While Defendant contends that its late filed exhibits are summary charts, they do not meet the requirements of Fed. R. Evid. 1006 to be admissible. Under Rule 1006, a proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or

photographs that cannot be conveniently examined in court. However, Rule 1006 requires that "[t]he proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." See Curtis v. Perkins (In re International Management Assoc., LLC), 781 F.3d 1262, 1268 (11th Cir. 2015). Further, the admissibility of the underlying records is a condition precedent to introduction of the summary into evidence under Rule 1006. Id.; George Russell Curtis, Sr., Living Trust v. Perkins (In re International Management Associates, LLC), 781 F.3d 1262 (11th Cir. 2015). Defendant has not produced many of the underlying documents supporting the numbers included in the analyses and made no showing that all underlying documents are admissible. The Court will review the specific issues with respect to each exhibit below.

    ii.   Hearsay

Another issue with many of the documents Defendant seeks to admit is that the statements contained in the written analyses are hearsay and must be excluded. If facts contained in written assertions are to be received into evidence it must be shown that they are: (1) relevant, (2) based on the witness' personal knowledge, and (3) not subject to a rule of exclusion (e.g., the hearsay rule). While the statements in the exhibits are relevant to the question of solvency, and many are supposedly based on Chuck Thakkar's personal knowledge, the exhibits must nevertheless be excluded as hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A "statement" includes a written assertion. Fed. R. Evid. 801(a). Thus, as a general proposition, writings are hearsay and are not admissible under Rule 802 unless they fall within one of the categories set forth in "statements which are not hearsay" as defined in Rule 801(d) or within one of the exceptions to hearsay as set forth in Rules 803 or 804. There is no exception to the

hearsay rule contained in either Rule 803 or 804 for documents simply because they were prepared by a witness who is available to be cross examined. There is also no exception to the hearsay rule for expert written reports, although Chuck Thakkar was not identified or qualified as an expert in any event.

A statement that does not fall within one of the enumerated hearsay exceptions may nevertheless be admissible pursuant to Rule 807 provided it is supported by sufficient guarantees of trustworthiness after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement and it is more probative on the point for which it is offered than other available evidence. Further, the statement is only admissible if the proponent gives an adverse party reasonable notice of the intent to offer the statement. In re Int'l Mgmt. Assocs., LLC, 518 B.R. 668, 670 (N.D. Ga. 2014), aff'd on other grounds, 781 F.3d 1262 (11th Cir. 2015).

Further, the statements are not admissible under the residual hearsay exception because there are no circumstantial guarantees of trustworthiness. Plaintiff asked for information about NRCT's assets and liabilities for months and months. After steadfastly refusing to provide any real or substantive information, and after testifying at his deposition that he did not know the value of NRCT's assets and liabilities, Chuck Thakkar created this spreadsheet on the eve of trial with figures he conceived without supporting documents or evidence for all the information. The surrounding circumstances do not suggest these figures are reliable. See Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1147 (11th Cir. 1983) (discussing circumstantial guarantees of trustworthiness necessary to admit a document under Rule 807).

IV.    <u>Specific Exhibits</u>

**D30 Sugarloaf Centre LLC Insolvency Analysis**

On April 29, 2022, Defendant timely filed an exhibit 30, which purported to be a Sugarloaf Centre LLC Balance Sheet as of April 29, 2022. On May 6, 2022, Defendant filed a replacement D30, a "Sugarloaf insolvency analysis," which Defendant sought to admit at trial. The restated D30 is completely different from the original D30, not just in format but also in content. D30 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Moreover, D30 is not relevant to the contribution analysis as there is no dispute Sugarloaf paid at least its portion of the Wells Fargo/Bay Point debt under any analysis. D30 is unnecessary because it purports to summarize certain docket entries of which the Court has taken judicial notice. Finally, the document includes information not otherwise in the record or on the Court's docket, such as the balance due to Westmoore. Information supporting these statements in a summary must have been made available to the Plaintiff ahead of trial and be admissible. Defendant did not establish these prerequisites to admission. D30 remains excluded.

**D31 DCT Balance Sheet**

On April 29, 2022, Defendant timely filed an exhibit 31 which purported to be a DCT Balance Sheet as of April 29, 2022. On May 6, 2022, Defendant filed a replacement D31, "DCT insolvency analysis." The restated D31 is completely different from the original D31, not just in format but also in content. D31 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Moreover, the document is not necessary because it includes information otherwise in the record: the exhibit lists DCT's cash on hand per

DCT's monthly operating report from March 2020, which is already part of the record (Case No. 15-58441 Doc. No. 113). More importantly, the exhibit is not relevant. No one contends DCT is solvent. For these reasons, it will remain excluded.

### D33 Nilhan Developers Insolvency Analysis

On April 29, 2022, Defendant timely filed an exhibit 33 which purported to be a Nilhan Developers Balance Sheet as of April 29, 2022. On May 6, 2022, Defendant filed a replacement D33, "Nilhan Developers Insolvency Analysis." The restated D33 is completely different from the original D33, not just in format but also in content. D33 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Moreover, D33 is not relevant to the contribution analysis as there is no dispute Nilhan Developers paid at least its portion of the Wells Fargo/Bay Point debt under any analysis. Finally, the document includes information not otherwise in the record or on the Court's docket, such as the value of land in South Carolina after closing costs and the interest due on the Norcross Hospitality note. Information supporting these statements in a summary must have been made available to the Plaintiff ahead of trial and be admissible. Defendant did not establish these prerequisites to admission. D33 remains excluded.

### D34 NRCT Balance Sheet

On April 29, 2022, Defendant timely filed an exhibit 34 which purported to be a NRCT LLC Balance Sheet as of April 29, 2022. On May 6, 2022, Defendant filed a replacement D34, an NRCT LLC Balance Sheet also as of April 29, 2022. While the title of the exhibit did not change from April 29 to May 6, the exhibits are different. For example, the new D34 removed Lot 94 Grand Harbor, which was sold, as an asset. The new version also deleted the "other asset interests

19

in businesses," changed the value of investments, removed information about what the purported liabilities are for, listed a different number as "Due to affiliates," and did not account for cash in the Court's registry. D34 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. D34 is unnecessary because it purports to summarize certain docket entries of which the Court has taken judicial notice. Finally, the document includes information not otherwise in the record or on the Court's docket, including information about the supposed "Long Term Liabilities." The exhibit lists $14,646.464 allegedly due to affiliates. Information supporting these statements in a summary must have been made available to Plaintiff ahead of trial and be admissible. The only evidence Defendant has offered in support of this statement is Chuck Thakkar's testimony that NRCT owes $14 million to an insider, Niloy, Inc. While the Court will consider his testimony, his testimony does not establish the document is admissible. D34 remains excluded.

### D40 DCT Balance Sheet

This document is duplicative of D31. For the reasons stated above in reference to D31, D40 is inadmissible and remains excluded.

### D44 JAX Fairfield Financial LLC Balance Sheet

On May 6, 2022, Defendant filed D44, a "JAX Fairfield Financial LLC Balance Sheet." D44 had not previously been filed. D44 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Further, D44 reports a checking account balance and liabilities, but it includes no information about the source of the reported figures. Information supporting these statements in a summary must have been made available to

20

the Plaintiff ahead of trial and be admissible. The only evidence Defendant has offered in support of this statement is Chuck Thakkar's testimony that JAX's liabilities are approximately $11.3-4 million and JAX has cash of around $17,800. While the Court will consider and weigh his testimony accordingly, his testimony does not establish the document is admissible. Defendant did not establish these prerequisites to admission. D44 remains excluded.

### D47 Nilhan Developers Balance Sheet

This exhibit is duplicative of D33. For the reasons stated above in reference to D33, D47 is inadmissible and remains excluded.

### D49 Nilhan Financial, LLC Balance Sheet

On May 5, 2022, Defendant filed an exhibit 49, a Nilhan Financial, LLC Balance Sheet. D49 had not previously been filed. D49 was late filed and not produced to Plaintiff until its filing with the Court. Then, on May 6, 2022, Defendant replaced D49 with a new document, also numbered D49 but labeled as a "Nilhan Financial Solvency Analysis." The restated D49 is completely different from the original D49, not just in format but also in content. The restated D49 removes much of the detail included in the original D49 including information about the entities to whom long term liabilities are owed. The restated D49 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits.

The Court notes that exhibit D49 attached to the Motion is different from the D49 filed on May 5, 2022 and the D49 filed on May 6, 2022, both of which were one-page documents. The D49 attached to the Motion includes an alleged balance sheet plus the Chapter 7 Trustee's Interim Report filed in the Nilhan Developers bankruptcy case in the Bankruptcy Court for the Middle

District of Florida (Case No. 8:17-bk-0397-MGW Doc. No. 778), and the claims register filed in the same case. These court documents are part of the public record and subject to judicial notice.

Federal Rule of Evidence 201, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 9017, permits a federal court to take judicial notice of an "adjudicative" fact that is indisputable either because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may take judicial notice of filings in other courts to establish the fact of the filing—not for the truth of its contents. Kaplan v. Regions Bank, 2019 WL 4668175, at *12 (M.D. Fla. Sept. 25, 2019). Thus, "a court may take judicial notice of the undisputed matters of public record, i.e., the fact that hearings and prior proceedings took place, and what was said in those proceedings[.]" Callier v. Outokumpu Stainless USA, LLC, 2022 WL 885037, at *3 (S.D. Ala. Mar. 24, 2022). A court has "wide discretion" to take judicial notice. Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004); Daker v. Holmes, 2022 WL 2129076, at *9 (11th Cir. June 14, 2022). The Court will take judicial notice of the Chapter 7 Trustee's report and the pleadings, including the schedules, orders, and claims filed. The remainder of D49 remains excluded.

**D51 Niloy & Rohan LLC Balance Sheet**

On May 5, 2022, Defendant filed D51, a Niloy & Rohan LLC Balance Sheet. D51 had not previously been filed. D51 was late filed and not produced to Plaintiff until its filing with the Court. Then, on May 6, 2022, Defendant replaced D51 with a new document, also labeled D51 "Niloy & Rohan LLC Balance Sheet" The restated D51 is similar to the original D51 in format, but it is different in content. The restated D51 removes Thakkar & Affiliates and Steve Reynolds as current assets. Restated D51 was late filed and not produced to Plaintiff until its filing with the

Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits.

Further, D51 reports a checking account balance and liabilities, but it includes no information about the source of the reported figures. Information supporting these statements in a summary must have been made available to the Plaintiff ahead of trial and be admissible. The only evidence Defendant has offered in support of this statement is Chuck Thakkar's testimony that Niloy & Rohan, LLC had $501,000 in cash and liabilities in excess of $7.5-8 million. While the Court will consider and weigh his testimony accordingly, his testimony does not establish the document is admissible. Defendant did not establish these prerequisites to admission. D51 remains excluded.

### D56 NRCT Balance Sheet

On May 5, 2022, Defendant filed an exhibit 56, a "NRCT LLC Balance Sheet." D56 had not previously been filed. D56, however, appears to be the same as the exhibit D34 that was filed on April 29, 2022, which is not the same document that was filed on May 6, 2022 as D34. To further confuse matters, on May 6, 2022, Defendant filed a new document which was also labeled D56 "NRCT LLC Balance Sheet." The restated D56 is similar to the original D56 in format, but it is different in content from the original D56. The restated D56 changes the value of assets reported (more specifically, it removes Lot 94 Grand Harbor SC as a fixed asset, changes the value of total fixed assets, removes investments in partnerships as assets, and deletes details about investments in DB 5YK-10165), and increases the amount of "Long Term Liabilities" allegedly due to affiliates. The refiling and relabeling of this exhibit created significant confusion and required the Court to undertake extensive analysis to determine which document was which. D56 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply

with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits.

As with D34, D56 is unnecessary to the extent it purports to summarize certain docket entries of which the Court has taken judicial notice. The document also includes information not otherwise in the record or on the Court's docket, including information about the supposed "Long Term Liabilities." Information supporting these statements in a summary must have been made available to Plaintiff ahead of trial and be admissible. The exhibit lists over or under (depending on the version of D56 you consider) $14 million allegedly due to affiliates. The only evidence Defendant has offered in support of this statement is Chuck Thakkar's testimony that NRCT owes $14 million to an insider, Niloy, Inc. The Court, however, permitted him to testify as to his personal knowledge as former manager of NRCT and will weigh his testimony accordingly. Defendant did not establish these prerequisites to admission. D56 remains excluded.

**D58 Bay Circle Balance Sheet**

On May 5, 2022, Defendant filed an exhibit 58, which purported to be a balance sheet for Sugarloaf Centre, LLC (Doc. No. 191 part 25). On May 6, 2022, Defendant filed a replacement D58, which purports to be a Bay Circle insolvency analysis (Doc. No. 196 part 12). This is an entirely different document and refers to a different Debtor than the original D58. The new D58 also appears to conflict with the original D32, which was filed on April 29, 2022 as a Bay Circle Balance Sheet. Restated D58 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Moreover, the document is not necessary because it includes information otherwise in the record: the exhibit lists cash on hand per the Bay Circle Chapter 7 Trustee's interim report (Case No. 15-58440 Doc. No. 1503), and outstanding

administrative claims, all of which are in the record. More importantly, the exhibit is not relevant. Bay Circle is the party seeking contribution—its solvency is not at issue. Accordingly, D58 remains excluded.

### D71 WF claim analysis

On May 6, 2022, Defendant filed D71 for the first time. D71 purports to be a Wells Fargo Secured Claim Analysis. No exhibit resembling this purported analysis was produced or filed prior to May 6, 2022. D71 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Some of the figures included in the exhibit appear otherwise in the record—the bankruptcy settlement agreement balance, for example, is part of a public record on the Court's docket. There is nothing in the record, however, on several other items listed in the exhibit included accrued interest and early termination fees. The exhibit also seems to omit the swap agreement.

The document includes no information about the source of the numbers included in the analysis. The figures in D71 also appear to be miscalculated, severely undermining the reliability of the document. Further, Defendant provided no prior notice of its intention to use this exhibit. It appears Chuck Thakkar created this exhibit on the eve of trial with his own figures without any supporting documents or evidence. The surrounding circumstances do not suggest these figures are reliable. Moreover, while the document purports to be a summary chart, Defendant has not established the admissibility of the underlying documents (to the extent there are any) and, therefore, D71 does not meet the requirements of Fed. R. Evid. 1006. Accordingly, D71 remains excluded.

**D72 Chuck Thakkar Insolvency Analysis**

On May 6, 2022, D72 was filed for the first time. D72 was late filed and not produced to Plaintiff until its filing with the Court. Defendant did not comply with the Court's orders of January 13, 2022 and March 30, 2022 regarding timely production and filing of exhibits. Further, D72 purportedly reflects Chuck Thakkar's assets and liabilities, but it includes no information about the source of the very limited information reported. Information supporting these statements in a summary must have been made available to the Plaintiff ahead of trial and be admissible. The only evidence Defendant has offered in support of this statement is Chuck Thakkar's testimony he has very few assets and personal judgments against him totaling over $15 million. While the Court will consider and weigh his testimony accordingly, his testimony does not establish the document is admissible. Further, given that it was created by Chuck Thakkar at the ninth hour with no supporting information whatsoever, it lacks sufficient guarantees of trustworthiness to be admitted. Defendant did not establish these prerequisites to admission. D72 remains excluded.

V.  <u>Conclusion</u>

For the reasons stated above,

**IT IS ORDERED** that the Motion is **DENIED**.

**IT IS FURTHER ORDERED** that D30, 31, 33, 34, 40, 44, 47, 49, 51, 56, 58, 71, and 72 remain excluded. P247-255 remain admitted.

**IT IS FURTHER ORDERED** that the Court takes judicial notice of the Chapter 7 Trustee's interim report in the Nilhan Developers bankruptcy case, Case No. 8:17-bk-0397-MGW Doc. No. 778, and 2), the schedules, and the claims register filed in the same case.

**END OF DOCUMENT**

**<u>Distribution List</u>**

John A. Thomson, Jr.
Adams and Reese LLP
3424 Peachtree Road NE, Suite 1600
Atlanta, GA 30326

Edmund S. Whitson, III
Adams and Reese LLP
101 E. Kennedy Blvd., Suite 4000
Tampa, FL 33602

Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell Jr., LLC
Buckhead Centre
2964 Peachtree Road NW Suite 555
Atlanta, GA 30305

Clay Martin Townsend
Morgan & Morgan, PA
20 North Orange Avenue Suite 1500
Orlando, FL 32801

Walter E. Jones
Balch & Bingham LLP
30 Ivan Allen Jr. Boulevard, N.W., Suite 700
Atlanta, Georgia 30308

John Lewis, Jr.
Shook, Hardy & Bacon, LLP
1230 Peachtree Street, Suite 1200
Atlanta, GA 30309